UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No.  **3:18 cr 184** |
| | : | |
| Plaintiff, | : | I N D I C T M E N T |
| | : | |
| v. | : | 18 U.S.C. § 1341 |
| | : | 18 U.S.C. § 1343  WALTER H. RICE |
| CLAYTON LUCKIE, | : | 18 U.S.C. § 2 |
| | : | |
| Defendant. | : | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1341 and 2]

I.  INTRODUCTION

At all times relevant to this Indictment:

1.  Defendant **CLAYTON LUCKIE** was a businessman in the greater Dayton, Ohio, metropolitan area who purported to have an affiliation with an entity identified herein as Corporation A. Based on publicly available information, Corporation A provided administrative support services, document management, and database maintenance.  Corporation A did not perform work in the construction industry, such as the actual demolition of buildings and removal of debris from job sites.

Page 1 of 10

2.    Federal, state, and local government entities administer several programs aimed at providing assistance to, and increasing the competitiveness of, certain small businesses owned or controlled by socially or economically disadvantaged individuals (hereinafter "Disadvantaged Businesses").  (Notably, Corporation A was a Disadvantaged Business).  These programs help Disadvantaged Businesses obtain certain federal, state or local certifications that allow these enterprises to bid on, or otherwise participate in the performance of, certain government contracts.

3.    When awarding contracts, government entities often set goals or require that a qualified and certified Disadvantaged Business perform some portion of the work on the project.  In doing so, the government entity may award all or a portion of the contract directly to the Disadvantaged Business. Alternatively, the government entity may give the contract to a non-disadvantaged business on the condition that the non-disadvantaged business sub-contract a portion of the project to a qualified and certified Disadvantaged Business.  To ensure that a non-disadvantaged business has actually retained a Disadvantage Business to perform bona fide work as a subcontractor, government entities will require both the non-

disadvantage business and the Disadvantage Business to submit valid, correct invoices reflecting work actually performed on the project.

4.   In an effort to evade these Disadvantaged Business goals or requirements, some individuals engage in various forms of fraud on the contracting government entity.  Most notably, some non-disadvantaged businesses falsely satisfy the Disadvantaged Business subcontracting goals or requirements of a government contract.  Rather than using a certified and qualified Disadvantaged Business to handle a portion of the project as represented to the government entity, the non-disadvantaged business performs all or a substantial portion of this work itself.  The non-disadvantaged business nevertheless falsely certifies to the government entity that a Disadvantaged Business performed actual, bona fide work on the contract.

5.   To provide legitimacy to this false claim, the non-disadvantaged business obtains the assistance of an actual Disadvantaged Business to perpetrate the fraud.  The Disadvantaged Business either allows its name to be submitted on the paperwork to the government even though it performed no work on the project or work substantially below that contained in the contract.  In return for permitting the fraudulent use of its

name on the paperwork, the Disadvantaged Business receives a small payment from the non-disadvantaged business even though it performed no or little bona fide work on the project. The Disadvantaged Business also may provide additional false paperwork for submission to the government entity, including, but not limited to, fake invoices, time cards or other fraudulent paperwork.

II.  THE SCHEME TO DEFRAUD AND ITS EXECUTION

6.   Between a beginning date unknown, but at least by in or around June 2016, and continuing through in or around January 2017, in the Southern District of Ohio, defendant **CLAYTON LUCKIE** knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud the City of Dayton and to obtain money and property owned by and under the custody and control of the City of Dayton, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent Disadvantaged Business scheme.

7.   Defendant **CLAYTON LUCKIE** devised this fraudulent Disadvantaged Business scheme to operate, and the Disadvantaged Business scheme did operate, as follows:

a.    Defendant **CLAYTON LUCKIE** approached the owner of Corporation B, a demolition and construction business that operated in southern Ohio.  After conversations about the nature of Corporation B's business, including its efforts to obtain demolition and construction contracts with various government entities – including the City of Dayton – defendant **CLAYTON LUCKIE** offered the use of Corporation A to satisfy falsely and fraudulently any Disadvantage Business sub-contracting goals or requirements contained in these government contracts.  In doing so, defendant **CLAYTON LUCKIE** knew that Corporation A lacked not only the construction equipment – such as heavy trucks – but also the skilled employees necessary to perform bona fide demolition and construction work required to serve as a subcontractor on these government contracts.

b.    Rather than Corporation A performing actual, bona fide demolition or construction work on a particular project as contemplated in a government contract, defendant **CLAYTON LUCKIE** understood and agreed that Corporation B would perform these services itself.  To create the false and fraudulent appearance that Corporation A was working at a particular demolition or construction site, defendant **CLAYTON LUCKIE** ordered large magnetic signs emblazoned with the name of Corporation A.

Defendant **CLAYTON LUCKIE** intended to affix these signs to Corporation B's trucks to provide the false appearance that Corporation A - not Corporation B - was performing demolition and construction work on the project and to deceive the City of Dayton in the event that its representatives visited the job site.

c.    To further facilitate the scheme, defendant **CLAYTON LUCKIE** prepared and caused to be prepared false, fictitious and fraudulent documentation, including invoices, for submission to the contracting government entity, including the City of Dayton.  For instance, defendant **CLAYTON LUCKIE** generated and caused to be generated invoices that falsely, fictitiously, and fraudulently claimed demolition or construction work that Corporation A purportedly had performed in compliance with the contract.  In reality, Corporation B had performed these services.  In creating this false, fictitious and fraudulent documentation, defendant **CLAYTON LUCKIE** intended to deceive the government entity, including the City of Dayton, concerning who had performed bona fide demolition or construction work at the job site.

d.    In fraudulently using Corporation A to satisfy falsely the Disadvantaged Business portion of a government

contract, defendant **CLAYTON LUCKIE** expected Corporation B to pay him thousands of dollars in cash – even though neither he nor Corporation A had performed or provide actual, bona fide demolition or construction work on a project consistent with the government contract.

       e.    Based, in part, on defendant **CLAYTON LUCKIE'S** false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, the City of Dayton issued funds, and awarded contracts, totaling over thousands of dollars.

III.  <u>THE MAILINGS</u>

       8.    On or about the date listed below, in the Southern District of Ohio, defendant **CLAYTON LUCKIE**, for the purpose of carrying out the above-described scheme to defraud and attempting to do so, caused the items described below to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers:

| COUNT | DATE | MAILING |
|-------|------|---------|
| ONE | 8/26/2016 | Package containing magnetic sign in the name of Corporation A to defendant **CLAYTON LUCKIE** in Dayton, Ohio |

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT TWO

[18 U.S.C. §§ 1343 and 2]

I. INTRODUCTION

9. The allegations of paragraphs 1 through 5 of this Indictment are realleged and incorporated by reference as though set forth in full.

II. THE SCHEME TO DEFRAUD AND ITS EXECUTION

10. Between a beginning date unknown, but at least by in or around June 2016, and continuing through in or around January 2017, in the Southern District of Ohio, defendant **CLAYTON LUCKIE** knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud the City of Dayton and to obtain money and property owned by and under the custody and control of the City of Dayton, by means of materially false and fraudulent pretenses, representations, and promises, and the

Page **8** of **10**

non-disclosure and concealment of material facts through a fraudulent disadvantaged business scheme.

11.    The scheme was designed to operate and did operate as described above in paragraphs 7(a) through 7(e) of this Indictment.

III. <u>THE WIRINGS</u>

12.    On or about the dates listed below, in the Southern District of Ohio, and elsewhere, defendant **CLAYTON LUCKIE,** for the purpose of carrying out the above-described scheme to defraud, caused the transmission of the following writings, signs, and signals, by means of wire communication in interstate commerce:



| COUNT | DATE | MAILING |
|-------|------|---------|
| TWO | 10/28/2016 | Interstate email and attachment from defendant **CLAYTON LUCKIE** to Corporation B |

In violation of Title 18, United States Code, Section 1343 and 2.

A TRUE BILL

S/

Foreperson

BENJAMIN C. GLASSMAN
United States Attorney

BRENT G. TABACCHI
Assistant United States Attorney